Com. of Pa. *v.* Frankfeld, Appellant.

Argued April 10, 1934.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*Sylvia Schlesinger*, for appellant.

*Charles B. Jarrett*, Assistant District Attorney, and with him *Andrew T. Park*, District Attorney, for appellee.

OPINION BY BALDRIGE, J., July 13, 1934:

The defendant was arrested and convicted of inciting to riot and obstructing the execution of legal process. The testimony was not reported by a stenographer, but from the charge of the court, which was taken and transcribed, and from statements made by the respective counsel in their paper books, we have gleaned the following facts:

Mr. Schugar, a deputy sheriff of Allegheny County, levied on twenty-three cows and other personal property of a farm tenant under an execution issued on a judgment for $1,300 entered by Miss McGregor, owner of the farm. The tenant, instead of seeking relief in the court where the execution was issued,

went to the "Unemployed Council," which seemed to assume certain authority, and presented his case. It apparently was adjudicated before this tribunal, and the tenant was informed that he was granted the relief he sought. Thereafter, on September 1, 1933, Schugar went to the farm to conduct a sale of the property levied upon. Several hundred people had assembled there, who were engaged in gathering apples and tomatoes growing on the property. The defendant arrived before the sheriff and was invited to speak to the crowd by one, Jessup, who introduced him as the secretary of the Allegheny County Council of Unemployed. The defendant spoke for ten or fifteen minutes to the effect that workers and farmers should unite to demand their rights and prevent such sales as this one. He explained how they should make the bids to help the man who was being sold out, and stated that their strength was in unity and organization and that they must protect themselves from foreclosures and evictions from their homes. He cautioned the crowd, however, to be orderly and disciplined. This last statement can not be disassociated, however, from other language and actions of the defendant and his associates in determining their main purpose. Soon after this speech, the sheriff reached the premises and drove to the barn by a private road. At this time not over half a dozen people were in sight, but immediately thereafter the crowd gathered from all directions and completely surrounded him. Two trucks were driven into the private driveway, blocking his exit to the main road. The crowd at that time was estimated at from two to four hundred people. Fearing trouble, the deputy announced that the sale would be postponed for one week since the execution plaintiff was not present. Unidentified persons in the crowd shouted "Sell or select your limb." It was testified that there was noise and confusion in the crowd, and one witness said

"there were plenty of fists waved." Defendant and others maintained, however, that the crowd was very orderly. The sheriff testified that the defendant seemed to be the leader, and it was to him the sheriff appealed to disburse the crowd, but he told the sheriff to go ahead with the sale, that nobody would hurt him. Miss McGregor, who had arrived before the sheriff, was summoned from the farmhouse and, as she appeared, she, also, was surrounded by part of the crowd and could not get to the sheriff until the defendant motioned to make way for her. The defendant asked her if she wanted to go on with the sale and she told him, "What I want is money to pay my taxes. If this crowd has money to buy, go on with the sale." Several persons said that they had money and that they were there to buy. Miss McGregor then directed the sheriff to proceed with the sale. He announced the terms of the sale and called for bids. The first one was $1, the second $1.05 and the third $1.10. Miss McGregor attempted to bid but was told by various parties, including the defendant, that she could not bid as she was the owner of the farm and plaintiff in the writ. Miss McGregor turned to the defendant after the sale and said, "How am I supposed to get money to pay my taxes?" to which he replied, "When the sheriff comes to sell you out for taxes we will come five thousand strong and help you out." The sheriff further testified that during the sale, "The defendant said we are going to show the courts and judges how such matters as this are handled out West." The purchaser, to whom all the property was knocked down for $1.10, insisted on getting a bill of sale from a nearby justice of the peace, but he was told by the sheriff that it could be obtained only from the sheriff's office in Pittsburgh. Defendant then directed the sheriff to get down from the box on which he was standing and defendant again addressed

the assembled crowd for approximately five minutes, telling them that this was a national emergency, comparable to the situation in 1776, and that the people gathered there were the minutemen of 1933 to stop wrongs and oppression, etc. The sheriff testified, also, that at the sale he purchased, for one cent a copy, two pamphlets published by the Communist Party, entitled "What Price War," that were for general sale among the crowd.

The assignments of error are confined to the sentences imposed.

We pointed out in Com. v. Hanley, 15 Pa. Superior Ct. 271, 276, that where one regards the evidence of the Commonwealth as insufficient to warrant a verdict against him, as is the case here, he may obtain a review in the appellate court by a request for binding instructions and excepting thereto and assigning for error refusal to so charge. This was not done. We will pass this technical objection, however, and dispose of the case on its merits.

While inciting to riot is not a statutory offense in this state, it is clearly an offense at common law, and has always been so recognized in Pennsylvania. The gist of the offense is its tending to provoke a breach of the peace. In Commonwealth v. Merrick et al., 65 Pa. Superior Ct. 482, 488, where there is a very full discussion of what constitutes the crime of inciting to riot, we said: "From the earliest declaration of the common law, it has been held, that 'If any person encourages or promotes, or takes part in riots, he is to be considered a rioter, for in such case all are principals ...... If persons assemble together for an unlawful purpose, every man is guilty of all acts done in execution thereof or contributing or tending to that purpose. If they meet for a lawful purpose, and proceed to an unlawful act, it is a riot.'" In Commonwealth v. Spartaco, 104 Pa. Superior Ct. 1, 7, 158 A.

623, Judge KELLER, speaking for the court, said: "Inciting to riot, from the very sense of the language used, means such a course of conduct, by the use of words, signs or language, or any other means by which one can be urged on to action, as would naturally lead, or urge other men to engage in or enter upon conduct which, if completed, would make a riot ......"

Some of the threats were not shown to have been made by the defendant, but, as above stated, every person assembled there for that unlawful purpose was guilty of all acts in the execution thereof, or tending to that purpose. None of the persons were there by chance; certainly the defendant was not. He was evidently there for a very definite and unlawful purpose. He was not a disinterested onlooker, but an active participant and a leader in the direction of the activities. He testified that he had received notification of the sale from the secretary of a local council and that the scheme of bidding was an idea of his own. This obviously was a prearranged plan for a demonstration with a sinister purpose. The results which the crowd sought were accomplished. No other construction can be given the remarks made by the appellant than that he was urging and inciting the crowd at this sale to violence as resorted to by Middle-Western farmers to prevent evictions and sheriff sales. Certainly, the jury was justified in finding, in view of what was said and done, that the defendant's sole purpose in attending and speaking at the sale was to arouse and urge the crowd on to action that would have amounted to a riot, if need be, to accomplish the unlawful purpose of preventing the sheriff from executing his writ.

The Act of March 31, 1860, P. L. 382, §8 (18 PS §257), under which defendant was indicted for obstructing legal process, provides: "If any person shall knowingly, wilfully and forcibly obstruct, resist or oppose any sheriff ...... in serving or attempting to

serve or execute any process or order of any court, ...... such person shall be guilty of a misdemeanor ......."

The Federal statutes and the statutes of most other states do not use the word "forcibly." The appellant contends that the word means active, physical force, and that as there was no proof of actual force, he can not be convicted of obstructing legal process. We do not agree with that interpretation of the statute. In our view, the intent of the Legislature was that verbal remonstrances, unaccompanied by threats or incitement to resistance, are insufficient. But where there is a presence of deterring power and threats of physical force, either express or implied, if the service of the writ or process is executed, it comes within the contemplation of the statute. Officers charged with the service of process should be and are under the protection of the law. To intimidate them by the use of threats, accompanied by an exhibition of physical power and an apparent intent to use it, thus preventing the execution of process, is a crime. For instance, if one exhibits and threatens to use a deadly weapon on an officer if he executes a process, and the officer is thus deterred from carrying out his official duty, it is just as effective an interference with service as if actual force had been used. It would be fatuous to say that such action is not an obstruction of legal process. In Wharton Criminal Law, 12th ed., vol. 1, §857, page 55, it is said: "It is not necessary that there should be a blow struck or force actually applied, (Rex v. Bootie, 2 Burr (Eng.) 864) though it is essential that the resistance should imply the application of force, actual or threatened; mere vituperation not constituting the offense, unless there be an apparent intention to resist by force, (Commonwealth ex rel. Walker v. Sheriff, 3 Brewster (Pa.) 343) but whether the process be criminal or civil, resistance to its execution, where-

by such execution is hindered, is an indictable offense.''

The facts above narrated amply justified the jury in concluding that the sheriff was placed in fear of bodily harm, and that what was said and done by the defendant and those whom he was leading prevented him from executing the process in an orderly and legal manner.

The appellant in his paper book made some complaint to the charge of the court, but from the record before us, the case was properly tried and fairly submitted to the jury. When the learned trial judge inquired whether there were any points of law or matters upon which he did not charge, the defendant's counsel said there were none, and took but a general exception to the charge.

The judgment is affirmed, and it is ordered that the appellant appear in the court below at such time as he may there be called and that he be by that court committed until he has complied with the sentence or any part of it which had not been performed at the time the appeal in this case was made a supersedeas.