Armour Leather Company, Appellant, *v.* Unemployment Compensation Board of Review.
Ross Unemployment Compensation Case.

Argued September 16, 1959. Before RHODES, P. J., GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (HIRT, J., absent).

*Seth McCormick Lynn,* with him *S. Dale Furst, Jr.,* and *Furst, McCormick, Muir, Lynn & Reeder,* for employer, appellant.

*Sydney Reuben,* Assistant Attorney General, with him *Anne X. Alpern,* Attorney General, for Unemployment Compensation Board of Review, appellee.

OPINION BY WOODSIDE, J., April 13, 1960:

These unemployment compensation cases arise out of a work stoppage which the referee and the Board of Review, in reversing the Bureau of Employment Security, found to be a lockout. If the claimants were

locked out by their employer, they are entitled to unemployment compensation. If they were not locked out, they are disqualified by section 402 of the Unemployment Compensation Law, as amended, 43 PS §802(d), which provides, inter alia:

"An employe shall be ineligible for compensation for any week— . . . (d) In which his unemployment is due to a stoppage of work, which exists because of a labor dispute (other than a lockout) at the factory, establishment or other premises at which he is or was last employed . . ."

Allen T. Ross and Richard E. Westover, the claimants in these two cases, were employed by the Armour Leather Company, in the beamhouse[1] of its tannery. The company had employed 23 men full time and one man part time in that department. Early in 1958, the company shut down its operations for a period of five weeks during which time it installed more efficient machinery in the beamhouse. When operations were resumed on May 1, only 14 men were assigned by the company to work there. These men were not able to, or at least did not, complete their assigned work during the eight hour day and worked from 1½ to 3 hours a day overtime. They were paid time and half time for all overtime. Of course, it is not the intent of the Unemployment Compensation Law that an employer should operate his plant in a vacuum, without change or improvement, in order that he might keep his employes on the job. *Hughes Unemployment Compensation Case,* 187 Pa. Superior Ct. 252, 264, 144 A. 2d 685 (1958); *Vrotney Unemployment Compensation Case,* 188 Pa. Superior Ct. 405, 411, 414, 146 A. 2d 751 (1958).

---

[1] "The 'beamhouse' is where hides are brought in to process and in this first operation the hides are haired and defleshed and made ready for tanning," Notes of Testimony.

A collective bargaining agreement was in effect during the entire period here involved. This agreement provided, inter alia, as follows: "Except as hereinafter provided, eight (8) hours shall constitute a normal day's work and all work performed in excess of eight (8) hours in any one day shall be paid for at the overtime rate; no employee shall be paid daily overtime until after completing eight (8) hours of work in one day."

The agreement further provided that the ". . . company agrees to distribute [overtime] work as equally as practicable among all employees competent and capable to perform this work, and any employee who refuses to perform such work after being assigned thereto, shall be subject to discipline by the Company . . ."

Approximately two weeks after the installation of the new machinery, the employes asked the company for additional help in the beamhouse. For several weeks thereafter the company and the union negotiated over employing additional men in this operation. The company finally offered to add eight hours of additional help daily, and the union insisted that sixteen hours of additional help should be furnished.

This was the status of the negotiations on June 20th. When it became apparent on that day that overtime would be required to finish the work in the beamhouse, the employes agreed among themselves to walk out that evening at the end of the eight hour day. They accordingly quit at that time. Except to finish certain work in process, the claimants and their fellow employes refused to work thereafter during the period for which they now claim unemployment compensation. The claimants and the other employes finally returned to work in August when eight hours additional help was given in the beamhouse, and a union steward, whom the company had suspended because they believed he was responsible for ordering the work stoppage, was re-

stored to his employment. The eight hours additional help was offered by the employer before the claimants left their employment.

The evidence, viewed in the light most favorable to the claimants, establishes the above facts. See *Dydo Unemployment Compensation Case*, 189 Pa. Superior Ct. 286, 290, 150 A. 2d 591 (1959). The board found, inter alia, that: "The company refused to place an additional 16 hours of help in the claimant's department. Several meetings had been held in order to resolve the dispute, however, it was to no avail. After the company refused the request of the bargaining agent, the claimant and his fellow employees refused to report for work."

We have repeatedly said that the duty of the compensation authorities "is to determine whether the employes are unemployed through no fault of their own. If the employes have acted consistently with the desire to remain employed, they are entitled to compensation under the Law to alleviate the economic burdens commensurate with unemployment . . . But, where a contract is in existence and the dispute concerns merely a breach of that contract by the employer, there are remedies available in the contract or in the courts for settlement of the dispute without any cessation of employment." *Accurti Unemployment Compensation Case*, 187 Pa. Superior Ct. 391, 399, 144 A. 2d 673 (1958).

As was said in *Miller v. Unemployment Compensation Board of Review*, 152 Pa. Superior Ct. 315, 321, 31 A. 2d 740, 743 (1943) ; and repeated by President Judge RHODES in *Hughes Unemployment Compensation Case*, supra, 187 Pa. Superior Ct. 252, 267, 144 A. 2d 685 (1958) : "The Unemployment Compensation Law was not intended to promote stoppages of work by employees because of disputes with employers or bargaining agencies, which could be legally determined without any cessation of work. The fundamental idea

of the Act is to provide a reserve fund to be used for the benefit of persons unemployed through no fault of their own. To call a suspension of work and act in concert to prevent a continuance of operations, without resorting to the legal measures open to determine the rights of the parties, amounts to a voluntary suspension of work, with the necessary consequences provided in the Act." If the employer was violating the contract there was a remedy, but completely aside from whether there was or was not any such remedy, the work stoppage here was a strike, not a lockout.

A lockout has been defined as "an employer's withholding work from his employes in order to gain a concession from them." *Burleson Unemployment Compensation Case*, 173 Pa. Superior Ct. 527, 98 A. 2d 762 (1953); *McGinnis Unemployment Compensation Case*, 184 Pa. Superior Ct. 95, 100, 132 A. 2d 749 (1957); *Lerch Unemployment Compensation Case*, 191 Pa. Superior Ct. 159, 164, 155 A. 2d 470 (1959).

A strike is defined as the act of quitting work done by mutual understanding by a body of workmen as a means of enforcing compliance with demands made on their employer.[2] Webster's New International Dictionary (2nd Edition).

---

[2] At times we have used the Restatement of Torts (§797) definition of a strike which is "a concerted refusal by employes to do any work for their employer, or to work at their customary rate of speed, until the object of the strike is attained, that is, until the employer grants the concession demanded." *Hogan Unemployment Compensation Case*, 169 Pa. Superior Ct. 554, 83 A. 2d 386 (1951); *Byerly Unemployment Compensation Case*, 171 Pa. Superior Ct. 303, 308, 90 A. 2d 322 (1952); *Dydo Unemployment Compensation Case*, supra, 189 Pa. Superior Ct. 286, 291, 150 A. 2d 591 (1959). The definition is not accurate as the concerted refusal to work in order to gain a concession would be a strike whether or not it continued "until the employer grants the concession demanded." A work stoppage can be a "strike" whether or not its object is attained.

The core of a lockout is the act of an employer in *withholding work*. Did the company *withhold work* from the claimants in these cases?

The evidence here shows beyond any doubt that work was available to these claimants. They left their employment in order to force their employer to give 16 more hours regular employment in the beamhouse. In the words of the board, the claimants "refused to report for work." They refused in order to force the company to comply with "the request of the bargaining agent" . . . "to place an additional 16 hours help in the claimant's department." It was a concerted refusal to work by the claimants and their fellow employes for the purpose of forcing their employer to grant a concession.

It is our duty to construe words contained in statutes according to their common and approved usage. *Dydo Unemployment Compensation Case*, supra, 189 Pa. Superior Ct. 286, 290, 150 A. 2d 591 (1959) ; Statutory Construction Act of May 28, 1937, P. L. 1019, §33, 46 PS §533. Were it not for the use of the term "lockout" in the above provision of the Unemployment Compensation Law, no person would ever think of referring to this work stoppage as a lockout. It was a strike by employes to obtain a concession from their employer. See *Dydo Unemployment Compensation Case*, supra, p. 293.

How the term "lockout" has been perverted to bring about desired results is demonstrated here. The board has found that work was withheld from the claimants by their employer by giving them too much work. *Thus, the board held that giving work is withholding work.* Instead of giving the claimants only 8 hours of employment, they were given 9, sometimes 10, and occasionally 11 hours employment a day. Their hours of employment were increased approximately 25% ; their wages 37½%. It cannot be found from the evidence that had

they failed to work overtime they would have been denied work. One of the claimants testified he did not know what the company would have done had he refused to work more than eight hours.

As we stated in *Mehlbaum Unemployment Compensation Case,* 175 Pa. Superior Ct. 497, 503, 107 A. 2d 141, 143 (1954), and repeated in *Hughes Unemployment Compensation Case,* supra, 187 Pa. Superior Ct. 252, 263, 144 A. 2d 685 (1958) : "We must not lose sight of the purpose of the Act, as expressed in the declaration of public policy. It was designed to benefit those persons who became unemployed through no fault of their own: . . . This public policy must be considered in construing every provision of the law and in determining eligibility for compensation in every case: . . ."

Believing that this employer was not withholding work from the claimants by giving them too much work, we conclude from the undisputed facts that the board erred in holding this work stoppage was a lockout.

Decisions reversed.