397 A.2d 420

**COMMONWEALTH of Pennsylvania**

v.

**Lonnie ASHFORD, Appellant.**

Superior Court of Pennsylvania.

Submitted March 2, 1978.

Decided Jan. 19, 1979.

Petition for Allowance of Appeal Denied April 16, 1979.

Edward F. Browne, Assistant Public Defender, Lancaster, for appellant.

Michael H. Ranck, Assistant District Attorney, Lancaster, for Commonwealth, appellee.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

SPAETH, Judge:

This is an appeal from judgment of sentence for possessing a prohibited offensive weapon.[1] Appellant argues that the knife he possessed was not a prohibited offensive weapon within the meaning of the Crimes Code.

1. Pa.Crimes Code, 18 Pa.C.S.A. § 908 (1973).

Appellant was arrested by a Lancaster City police officer during the morning of February 29, 1976. The officer had noticed appellant riding a motorcycle and decided to follow him to investigate a prior criminal incident. After following appellant to his house, the officer asked him to produce his driver's license and owner's card. As appellant reached into his pocket, the officer noticed the handle of a knife; he grabbed appellant, and the knife dropped out. The knife was a total of ten inches long, with a blade four and one half inches long and a lock that secured the blade, either in an open or closed position. To open the knife, the lock had to be released. Once the lock was released, the blade could be exposed by a flick of the wrist. N.T. at 28, 29. The officer testified that he did not know the name of this sort of knife, but it was not a "switchblade." N.T. at 29.[2] Both appellant and his mother testified that appellant had used the knife to cut certain wires on his motorcycle the previous day. N.T. at 42, 57. Appellant's mother testified that some of her grandchildren found the knife, and that the next time she saw it, appellant had put it in his tool box. N.T. at 56, 57.

Section 908(a) of the Pennsylvania Crimes Code states: "A person commits a misdemeanor of the first degree if, except as authorized by law, he makes repairs, sells, or otherwise deals in, uses, or possesses any offensive weapon." Section 908(c) defines an "offensive weapon" as "any bomb, grenade, machine gun, sawed-off shotgun, firearm specially made or specially adapted for concealment or silent discharge, any blackjack, sandbag, metal knuckles, dagger, knife, razor or cutting instrument, *the blade of which is exposed in an automatic way by switch, push-button, spring mechanism, or otherwise, or other implement for the infliction of serious bodily injury which serves no common lawful purpose.*" (Emphasis added.) We must therefore decide, first, whether the knife had a blade "exposed in an automatic way," and second, if it did not, whether it was an

---

**2.** Webster's New World Dictionary of the American Language (College Edition 1960) defines a "switchblade" as: "A large jackknife having a blade that opens rapidly when a button or other device on the handle is pressed."

"implement for the infliction of serious bodily injury which serve[d] no common lawful purpose."

### 1

A close reading of section 908(c) and of the relevant case law will show that the knife did not have a blade "exposed in an automatic way." It is to be assumed that the legislature uses words in their standard, or accepted, sense. *Vitolins Unempl. Compensation Case*, 203 Pa.Super. 183, 199 A.2d 474 (1964); *Ross Unempl. Compensation Case*, 192 Pa.Super. 190, 159 A.2d 772 (1960). Webster's New World Dictionary of the American Language defines "automatic" as: "Done without conscious thought or volition, as if mechanically, or from force of habit 2) moving, operating, etc. by itself; regulating itself." A blade that must be exposed by a flick of the wrist, as the arresting officer testified, is not exposed "as if mechanically" or "by itself." Furthermore, the phrase "exposed in an automatic way" must be read in its context which is: "exposed in an automatic way by *switch, push-button, spring mechanism, or otherwise*" (emphasis added). The legislature thus proscribed four categories of automatic knives, the first three categories being described specifically, the last, generally. The rule of construction applicable to such a statute is well settled. In *Butler Fair and Ag. Assn. v. Butler Sch. Dist.*, 389 Pa. 169, 178, 132 A.2d 214, 219 (1957), the Supreme Court said: "General expressions used in a statute are restricted to things and persons similar to those specifically enumerated in the language preceding the general expressions" (*quoting Frederick's Estate*, 333 Pa. 327, 331, 5 A.2d 91, 93 (1939)). Likewise, in *Commonwealth v. Simmons*, 211 Pa.Super. 344, 348, 236 A.2d 563, 565 (1967), we said that "[i]n construing a statute, general expressions must be restricted to things and persons similar to those specifically enumerated in preceding language." Thus the legislature's use of "otherwise" after "switch, push-button, [and] spring mechanism" shows that by "otherwise" the legislature referred to knives that were opened by some sort of mechanism—not a "switch", "push-button", or "spring" mechanism, but still, a mechanism.

This construction is also consistent with the case law. In *Commonwealth v. Walton*, 252 Pa.Super. 54, 380 A.2d 1278 (1977), the defendant had been convicted of possessing a sword cane.[3] We affirmed, but not on the basis that the sword cane was a "cutting instrument, the blade of which is exposed in an automatic way." Instead we accepted the defendant's argument that a sword cane could not fit this description because its blade "is exposed by pushing a metal button on its side which releases a catch, allowing one to remove the sword from the lower part of the cane." Thus in *Walton* we recognized that the key fact was that the blade had to be manually exposed—as it had to be here.

It should also be noted that we have held that Section 908 imposes strict liability. Thus in *Commonwealth v. Ponds*, 236 Pa.Super. 107, 345 A.2d 253 (1975), a majority of this court, stating that "the class of weapons dealt with in Section 908 have no peaceful purpose, and their only conceivable use is for purposes which our society has found to be criminal," held that the Commonwealth need not prove that the defendant intended to employ the offensive weapon criminally. *See also Commonwealth v. Gatto*, 236 Pa.Super. 92, 344 A.2d 566 (1975). Every penal statute must be strictly construed, *Commonwealth v. Cunningham*, 248 Pa. Super. 219, 375 A.2d 66 (1977); this is particularly true when the statute imposes strict liability.

## 2

In *Commonwealth v. Gatto, supra*, we were given the opportunity to interpret the phrase, "implement for the infliction of serious bodily injury which serves no common lawful purpose." There, the appellant had been convicted under Section 908(c) because he had been carrying a knife about 30 inches long. We applied a "reasonable construction to the phrase in question," and concluded that "under the circumstances of this case . . . a thirty inch knife

---

**3.** In *Walton* we stated that a "sword cane looks like an ordinary cane but is in fact a sword with a sheath made to look like the lower part of a cane." 252 Pa.Super. at 56, 380 A.2d at 1278 n.1.

serves no common lawful purpose," adding: "Had appellant been on a journey through the tropical rain forests of South America, attempting to travel by foot from Bogota, Colombia to Caracas, Venezuela it could then be reasonably concluded that a thirty inch knife had a common lawful purpose; but appellant was in a high crime urban area of Scranton." 236 Pa.Super. at 97, 344 A.2d at 568–69. Although the facts of *Gatto* presented a strong basis for a conviction under Section 908, the case has created some confusion. On the one hand, *Gatto* may be read as suggesting that in order to determine whether a knife or gun serves no common lawful purpose, a court should inquire into the particular circumstances. Thus in *Commonwealth v. Fisher*, 244 Pa.Super. 309, 368 A.2d 736 (1976), where the defendant's conviction was based on possession of an object similar to brass knuckles, we affirmed because "under the circumstances here, and in *Gatto*, where the object is possessed in a downtown area of a large city during the early-morning hours, it has no common lawful purpose." On the other hand, *Gatto* may also be read as saying only that a thirty inch knife serve no *common* lawful purpose. Thus in *Commonwealth v. McHarris*, 246 Pa.Super. 488, 371 A.2d 941 (1977), we held that a Smith and Wesson .38 caliber revolver was not a "prohibited offensive weapon" under Section 908(c). In contrast to *Fisher*, we did not inquire into the particular circumstances but asked instead whether the revolver was among a "class of weapons which have no peaceful purpose and have no conceivable use except for purposes which our society has found to be criminal." 246 Pa.Super. at 491, 371 A.2d at 943. Having determined that revolvers have common lawful purposes, we held that the defendant could not be convicted under Section 908(c). Similarly, in *Commonwealth v. Smith,* 253 Pa.Super. 279, 384 A.2d 1343 (1978), where the defendant possessed a revolver-type handgun, we cited *Gatto* for the proposition that Section 908(c) should be given a "reasonable, common sense interpretation," and went on to say that "if a weapon has a common lawful purpose, the possession of it in itself does not violate § 908." As in *McHarris*, we did not inquire into the particu-

lar circumstances but asked instead whether the gun had common lawful purposes, and found it did, citing in support the Model Penal Code Comment to § 5.06 and 5.07, which stated: "Other weapons, like sporting rifles, shotguns, and revolvers . . . have peaceful as well as lethal potentialities. . . . Not only must we take account of the desires of sportsmen, farmers, and dealers in hunting equipment, we must also recognize that revolvers and knives are frequently carried for defensive purposes."

From this examination of cases it will be observed that *Smith, McHarris, Fisher* and *Gatto* can, and therefore should, be read as consistently holding that the key inquiry in a Section 908(c) case is whether the item in question has common lawful purpose; an object similar to brass knuckles or a 30 inch knife, may have a *conceivable* lawful purpose but not a *common* one. This inquiry into common lawful purpose is sufficient; there is no need to inquire further, by considering the particular circumstances of the case. Inquiry into the particular circumstances *is* necessary in a case arising under Section 907, which states that "A person commits a misdemeanor of the first degree if he possesses any instrument of crime with intent to employ it criminally", and defines "Instrument of crime" as "(2) anything commonly used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have." *See generally, Commonwealth v. McHarris, supra*, 246 Pa.Super. at 493, 371 A.2d at 944. This case, however, does not arise under Section 907 but under Section 908(c).

When we ask whether the knife here did or did not have a common lawful purpose, we discover that the Commonwealth offered no evidence that enables us to decide the point; the only evidence possibly relevant was appellant's testimony that he used the knife while working on his motorcycle. We are not in a position to find as a matter of judicial notice that the knife had no common lawful purpose, for a fact may only be noticed judicially when it is indisputable. *See Wells v. Pittsburgh Board of Public Education*, 31

Pa.Cmwlth. 1, 374 A.2d 1009 (1977). Thus it appears that the Commonwealth failed to prove an essential element of its case. Perhaps this happened because the Commonwealth tried its case on the theory that the knife was a prohibited offensive weapon in that the blade was "exposed in an automatic way."

The judgment of sentence is reversed, and appellant is ordered discharged.

JACOBS, President Judge, and VAN der VOORT, J., concur in the result.

CERCONE, J., files a dissenting statement.

PRICE, J., files a dissenting statement.

The decision in this case was reached prior to the retirement of JACOBS, former President Judge.

HOFFMAN, J., did not participate in the consideration or decision of this case.

CERCONE, Judge, dissenting:

A flick of the wrist which brings into play an automatic springing out of a blade is in my opinion an action close enough in time to the pushing of a button as to bring the knife within the definition of a prohibited offensive weapon under the provision of the Pa.Crimes Code, 18 Pa.C.S.A. Section 908 (1973). A flick of the wrist necessitates no physical touching of any part of the knife to bring the blade into automatic use and since it can happen almost simultaneously with the push of a button, I find such a knife, that can be so operated, falls within the terms of Section 908.

PRICE, Judge, dissenting:

The knife here in question has a lock which, when released allows the blade to be snapped open by a flick of the wrist. While the officer who testified said that it was not a "switch blade", he demonstrated the manner in which it could be opened as it supported in the record (N.T. 28, 29). The court below found that this satisfied the definition of Section

110

908(a).[1]  It seems to me that this is the exposing of a knife blade in a fashion covered by the "otherwise" in the definition.  I therefore dissent.  I would affirm the judgment of sentence.