397 A.2d 1200

**COMMONWEALTH of Pennsylvania**

v.

**Peter J. TROLENE, Appellant.**

Superior Court of Pennsylvania.

Submitted March 31, 1978.

Decided Feb. 9, 1979.

Timothy J. Savage, Philadelphia, for appellant.

Eric B. Henson, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before JACOBS, P. J., and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

PER CURIAM:

Appellant was convicted below of obstruction of the administration of law [1] and conspiracy [2] to commit the same offense. After the filing and denial of post-verdict motions, the lower court sentenced appellant to a fine of $3,000 or one year imprisonment on the obstruction charge, and two years non-reporting probation on the conspiracy charge. Appellant now contends that the evidence was insufficient to sustain the charge of obstruction because the Commonwealth proved only an unsuccessful attempt, and no actual obstruction of justice. He also contends that he is entitled to a new trial on the conspiracy charge because the court admitted certain hearsay statements of an alleged co-conspirator without any extrinsic evidence that the declarant was a member of a conspiracy with appellant and because the statements were admitted in violation of the attorney-client privilege.

The facts are as follows. On June 17, 1976, in City Hall Courtroom 196 in Philadelphia, the Honorable Benjamin W. Schwartz was scheduled to preside over a suppression hearing in a case charging George Lam and Adolph Casparro with running an illegal lottery. Lam's attorney, Richard L. Brown, Esq., testified that he intended to seek a continuance, but that Lam told him that a continuance was not necessary because the case had been "fixed" by appellant and James W. Gray, who was standing in the back of the courtroom. Brown notified the District Attorney's office of the planned "fix", and Assistant District Attorney John W. Morris and Detective James Kilgore came to Courtroom 196. They testified that they observed Lam and Casparro react in surprise when Judge Schwartz denied the motion to suppress, and turn and make eye contact with Gray. Gray left the courtroom and spoke to appellant, who said that he had spoken to the judge, and the judge might still blow out the case; if not he would give Gray his money back.

1. The Crimes Code, Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1; 18 C.P.S.A. § 5101.

2. The Crimes Code, *supra*; 18 C.P.S.A. § 903.

Judge Schwartz testified that around 9:45 a. m. on this day, appellant came to him in his chambers, and pointing to the names of Lam and Casparro on his trial list sheet, informed him (falsely) that Judge McCabe was interested in those two defendants. Judge Schwartz said he would consider that and give it some thought. He further testified that the contact didn't really mean much to him, and that he just decided the case on its merits, not giving any thought to the conversation again until the District Attorney's office contacted him about it.

The present obstruction of justice statute reads in pertinent part: "A person commits a misdemeanor . . . if he intentionally obstructs, impairs or perverts the administration of law. . . ." 18 C.P.S.A. § 5101. In the opinion below refusing to arrest judgment, the court relied heavily upon the American Law Institute's Comment on Section 208.30 of the Model Penal Code, from which § 5101 is wholly derived:

"(1) *In General.* The purpose of this section is to prohibit a broad range of behavior *designed to impede* or defeat the lawful operation of government. The section is therefore a general supplement to all the other provisions of Article 208 dealing with particular methods of interfering with proper functioning of the administration, *e. g.,* bribery, intimidation, perjury, tampering with evidence, escapes . . . . [H]aving determined in Section 208.14 that the offense of corruptly influencing official behavior should be limited to 'official proceedings,' to avoid penalizing simple requests for improper favors from legislators, law enforcement officers and the like, it would be inconsistent to prohibit in Sections 208.30 *all efforts* to obstruct, impair or pervert governmental operations." (emphasis added).

There are no decisions on § 5101 which are directly on point, but some of the language from our prior cases indicates that § 5101 is concerned with the means used to obstruct justice, and not necessarily the end result of justice obstructed. For instance, in *Commonwealth v. Kelly,* 245 Pa.Super. 351, 369 A.2d 438 (1976), we upheld a § 5101

conviction where the defendant, a Philadelphia police officer, falsely swore out an affidavit for a warrant to arrest, and thereby exposed the identity of, Andrew Maresse, an undercover agent who was investigating payoffs to defendant for noninterference with local gambling operations. We held that the arrest was a § 5101 obstruction, being "a means to an end, that being the hindrance of the investigation into the gambling operation." *Id.*, 245 Pa.Super. at 361, 369 A.2d at 443. In *Commonwealth v. Creamer*, 236 Pa.Super. 168, 345 A.2d 212 (1975), the defendant was charged with obstruction of justice and conspiracy in withholding from police certain knowledge about a homicide in Crawford County. However, neither the alleged conspiracy nor any overt act took place in Crawford County. We held that even though the *effect* of justice being obstructed was felt in Crawford County, still venue could only lie in those counties where the alleged criminal *conduct* occurred. This also suggests that § 5101 is more concerned with the means or acts employed to bring about an obstruction of justice than the actual obstruction itself.

Even in the older, pre-§ 5101 cases, we notice a greater concern for the acts by which an obstruction is attempted, rather than the ultimate obstruction itself. In *Commonwealth v. Frankfeld*, 114 Pa.Super. 262, 173 A. 834 (1934), the defendant was convicted for obstructing an execution sale,[3] although bids were taken and a sale did take place, because the riotous behavior of the crowds led by the defendant threatened to prevent a sale. The Court held: "The facts above narrated amply justified the jury in concluding that the sheriff was placed in fear of bodily harm, and that what was said and one by the defendant and those whom he was leading prevented him from executing the process in an orderly and legal manner." *Id.*, 114 Pa.Super. at 269, 173 A. at 836.

3. Act of March 31, 1860 P.L. 382, § 8. This statute read, in pertinent part: "If any person shall knowingly, willfully and forcibly obstruct, resist or oppose any sheriff . . . in serving or attempting to serve or execute any process, he . . . shall be guilty of a misdemeanor."

■ The federal cases decided under the federal obstruction of justice statute, 18 U.S.C. § 1503, also make it clear that the offense comprehends corrupt attempts to influence or impede the judicial process.[4] *See U. S. v. Walasek,* 527 F.2d 676, 679 n. 9 (3 Cir. 1975) (a non-coercive but corrupt attempt to influence is within the conduct proscribed); *U. S. v. Fineman,* 434 F.Supp. 197, 202 (E.D.Pa.1977), *aff'd,* 571 F.2d 572 (3d Cir. 1978) (Government need only show that defendant corruptly sought to impede efforts of grand jury). It should be noted, however, that the federal obstruction of justice statute specifically includes "endeavors" to influence or obstruct, language not used in the statute before us.[5] Under the federal statute, the punishable "endeavor" need only be "some overt act directed towards some person whose action or failure to act could affect the outcome of the case." *U. S. v. Campbell,* 350 F.Supp. 213, 214 (W.D.Pa.1972).

■ For further illumination of what is meant by the concept of "obstruction" of justice, we may also look to the cases decided under 17 P.S. § 2041, granting summary criminal contempt powers to our trial courts, which reads in pertinent part: "The power of the . . . courts to inflict summary punishments for contempts of court shall be restricted to the following cases: . . .

III. To the misbehavior of any person in the presence of the court, thereby obstructing the administration of justice." [6] The cases under § 2041 definitely require that an obstructive *effect* be caused by the actor's conduct before

4. This statute reads in pertinent part: "Whoever corruptly . . . endeavors to influence, intimidate, or impede any witness . . . or juror . . . or officer . . . or endeavors to influence, obstruct or impede the due administration of justice, shall be fined . . . ." 18 U.S.C. § 1503.

5. *See also Romans v. State,* 178 Md. 588, 592, 16 A.2d 642, 644 (1940), which construing another "endeavors to influence" statute, stated that "the act denounced . . . is an attempt."

6. Act of June 16, 1836 P.L. 784, § 23; 17 P.S. § 2041. This statute has recently been re-enacted with no substantive changes in the Act of July 9, 1976 P.L. 586, No. 142, § 2, eff. June 27, 1978; 42 Pa.C.S.A. § 4131.

summary criminal contempt may be inflicted. The Supreme Court recently said in *Commonwealth v. Garrison*, 478 Pa. 356, 372, 386 A.2d 971, 979 (1978): "An obstruction of the administration of justice is a significant disruption of judicial proceedings. . . . What is required is a showing of actual, imminent prejudice to a fair proceeding or the preservation of the court's authority."

*See also In re November 1975 Special Investigating Grand Jury*, 475 Pa. 123, 130, 379 A.2d 1313, 1317 (1977) (per ROBERTS, J.) (must show delay, frustration, disruption, or interference with court proceedings); *In re Johnson*, 467 Pa. 552, 561, 359 A.2d 739, 743 (1976) (must affect the process of trial in some way such as actual prejudice to a party); *Tenenbaum v. Caplan*, 454 Pa. 1, 4, 309 A.2d 428, 430 (1973) (must show interruption, disruption, or delay).

Federal cases construing the power of federal court judges to inflict summary criminal contempt also require that the act punished have an obstructive effect upon the court's proceedings. *See In re Michael*, 326 U.S. 224, 66 S.Ct. 78, 90 L.Ed. 30 (1945) (perjury alone does not constitute an obstruction); *Ex Parte Hudgings*, 249 U.S. 378, 382–84, 39 S.Ct. 337, 63 L.Ed. 656 (1919) (same). *But see Clark v. U. S.*, 289 U.S. 1, 53 S.Ct. 465, 77 L.Ed. 993 (1933) (concealment or misstatement by juror on *voir dire* is punishable because its tendency and design is to obstruct the process of justice).

 We conclude that § 5101 includes intentional, albeit unsuccessful, attempts to influence, obstruct, or delay the administration of law. The Comment of the drafters of Section 208.30 of the Model Penal Code, from which § 5101 is wholly derived, indicates as much. Clearly the interest sought to be protected by § 5101 is the same as the federal obstruction of justice statute. Accordingly, notwithstanding the absence of the word "endeavor" in § 5101, we think that the federal cases, holding that a corrupt attempt to influence the judicial process is a criminal obstruction, are instructive in this regard. Although the holding we announce today is new, the result was foreshadowed by our opinions in *Commonwealth v. Kelly, supra,* and *Commonwealth v.*

*Creamer, supra,* when in construing § 5101 we were more concerned with the means by which the obstruction was attempted, rather than the actual obstructive effect. Indeed, we can see from *Commonwealth v. Frankfeld, supra,* that historically the concern in this area is not only to prevent the due administration of law from being corrupted, but also to insulate that process from all improper attempts to influence or intimidate, both to forestall the risk that a court officer, witness, or juror might be corrupted, and to preserve the public integrity of our system of justice from any appearance of impropriety.

It is one thing to say that a judge's power to inflict summary criminal contempt for obstruction of justice should be limited to actual obstructions, and quite another to place that restriction upon the substantive offense of obstruction of justice. The contempt cases indicate that while a judge must have summary power to preserve a fair trial and his own authority, this power of summary disposition must be limited to actual obstructions of the judicial process to protect the actor's own due process rights to notice and a hearing prior to the imposition of criminal sanctions. *See In re Michael, supra; Commonwealth v. Garrison, supra.*

In this case, appellant admits in his brief, and the record amply supports the conclusion, that we have a corrupt, intentional attempt to influence a judge's decision in a pending criminal case. As such, we hold that the evidence was sufficient to prove the charge of obstruction of justice under § 5101.

■■■ Appellant also contends that Brown's testimony should not have been admitted in evidence against him. This contention is without merit. As to the alleged lack of extrinsic evidence connecting the hearsay declarant (Lam) in a conspiracy with appellant, we note first that it is permissible to prove participation in a conspiracy by circumstantial evidence. *Commonwealth v. Weitkamp,* 255 Pa.Super. 305, 323–324, 386 A.2d 1014, 1023–24 (1978). Here, appellant sought to influence the decision of Judge Schwartz specifically in Lam's case. When Judge Schwartz denied the

motion to suppress, Lam turned in surprise and looked at Gray, who left the courtroom and approached appellant, and engaged in a conversation incriminating both of them. From this evidence, extrinsic of Brown's testimony, one could reasonably infer by a preponderance of the evidence, *Commonwealth v. Hirsch,* 225 Pa.Super. 494, 497, 311 A.2d 679, 680 (1973), that appellant was not acting as an unknown volunteer on behalf of Lam, but was rather conspiring with him and Gray to "fix" Lam's case.

As to the claim based on the attorney-client privilege between Lam and Brown, appellant has no standing to invoke it. *Commonwealth v. McKenna,* 206 Pa.Super. 317, 322, 213 A.2d 223, 226 (1965); 8 Wigmore, Evidence § 2321 (McNaughton rev. 1961). Appellant claims that the privilege is by statute, 28 P.S. § 321 [7], a rule of competency, allowing anyone to invoke it, but cites for us no cases so construing the statute. In fact, the case of *Estate of Dowie,* 135 Pa. 210, 19 A. 936 (1890) holds exactly the opposite. Moreover, the scope of the privilege protects only disclosures made for the purpose of obtaining legal advice, *Fisher v. U. S.,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), and not disclosures made during the commission of and in furtherance of a crime. *U. S. v. Weinberg,* 226 F.2d 161 (3d Cir. 1955). *See also* Code of Professional Responsibility, Disciplinary Rule 4–101(C)(3).

Judgments of sentence affirmed.

SPAETH, J., files a dissenting opinion, in which CERCONE, President Judge, joins.

This case was decided prior to the retirement of JACOBS, former President Judge.

HOFFMAN, J., did not participate in the consideration or decision of this case.

7. This statute reads in pertinent part: "Nor shall counsel be competent or permitted to testify to confidential communications made to him by his client. . . ." Act of May 23, 1887 P.L. 158, § 5; 28 P.S. § 321.

SPAETH, Judge, dissenting:

I disagree with the majority's construction of Section 5101, and also with its view of the admissibility of the conspirator's out-of-court statement.

–1–

Section 5101 provides: "A person commits a misdemeanor of the second degree if he intentionally obstructs, impairs or perverts the administration of law or other governmental function . . . ." The majority says that "a corrupt, intentional attempt to influence a judge's decision in a pending criminal case . . . . [is] sufficient to prove the charge of obstruction of justice under § 5101." Majority opinion at 1204.[1] Thus the majority construes "obstructs", in Section 5101, as including "*attempt* to obstruct [influence a judge's decision]". This construction, I submit, violates settled principle. A penal statute must be strictly construed; if the statute says "A", it must not be construed as saying "A or B." *Commonwealth v. Teada,* 235 Pa.Super. 438, 344 A.2d 682 (1975). If the legislature wished to make it criminal under Section 5101 to "obstruct" *or* "to attempt to obstruct" justice, it could, and should, have said so.[2] Consider what the Congress did. Its enactment provides: "Whoever corruptly . . . *endeavors to influence,* intimidate, or impede any witness . . . or juror . . or officer . . . or *endeavors to influence,* obstruct or

1. The majority does not treat the question of whether appellant's action "impair[ed] or pervert[ed] the administration of law or other governmental function . . . ." This question has not been briefed by the parties.

2. It may be that as a practical matter the legislature did not have to express itself so fully in Section 5101, since attempts are separately punishable, *i. e.,* are punishable *as* attempts, under Section 901 of the Crimes Code. In other words, the legislature might have reasoned: If someone obstructs justice, let him be charged under Section 5101; if he "attempts to obstruct justice", let him be charged under Section 901. This consideration is not pertinent here, however, for appellant was not charged under Section 901, but only under Section 5101.

impede the due administration of justice, shall be fined . . . ." 18 U.S.C. § 1503 (emphasis supplied).[3]

It is not enough, however, to note the majority's error in construing "obstructs" as meaning "obstructs or attempts to obstruct"; the question remains: What does "obstruct" mean?

In answering this question it is enough to apply the general rule that we are to assume that the legislature uses ordinary words in their ordinary meaning. *Vitolins Unempl. Compensation Case,* 203 Pa.Super. 183, 199 A.2d 474 (1964); *Ross Unempl. Compensation Case,* 192 Pa.Super. 190, 159 A.2d 772 (1960). Webster's Third New International Dictionary defines "to obstruct" as follows: "1: to block up; stop up or close up: place an obstacle in or fill with obstacles or impediments to passing . . . 2: to be or come in the way of: hinder from passing, action, or operation: IMPEDE, RETARD . . . 3: to cut off from sight: shut out . . . to place obstacles in the way: IMPEDE syn see HINDER." Thus, to be punishable under Section 5101, conduct need not "block up" but it must at least "hinder" or "impede" the administration of law or other governmental function.

Here there was no evidence that appellant's conduct had any of these effects. As the majority says: "Judge Schwartz testified that around 9:45 a. m. on this day, appellant came to him in his chambers, and pointing to the names of Lam and Casparro on his trial list sheet, informed him (falsely) that Judge McCABE was interested in those

---

3. Thus, the federal cases cited by the majority are not in point. Moreover, I am not convinced that any prior Pennsylvania case law supports the majority's result. Sheldon Toll says that Section 5101 has "no similar provision in existing law." Toll, *Pennsylvania Crimes Code Annotated* 576 (1974). *Commonwealth v. Kelly,* 245 Pa.Super. 351, 369 A.2d 438 (1976), contains a fleeting mention of Section 5101, but no clear indication whether the conviction was based on an attempt to obstruct justice or on a completed obstruction. *Commonwealth v. Creamer,* 236 Pa.Super. 168, 345 A.2d 212 (1975), was predicated on jurisdictional precedent, not a close reading of Section 5101. The last case the majority cites, *Commonwealth v. Frankfeld,* 114 Pa.Super. 262, 173 A. 834 (1934), involved a different, earlier, statute.

two defendants. Judge Schwartz said he would consider that and give it some thought. He further testified that the contact didn't really mean much to him, and that he just decided the case on its merits, not giving any thought to the conversation again until the District Attorney's office contacted him about it." Majority opinion at 1202.

Given this evidence that appellant's conduct had no discernible effect on Judge SCHWARTZ's disposition of the Lam and Casparro cases, the lower court should have granted appellant's motion in arrest of judgment on the charge of obstruction of justice.

--2--

I believe that attorney Brown's testimony of what Lam said to him was inadmissible as hearsay, because the Commonwealth did not show by a "fair preponderance of the evidence," *Commonwealth v. Hirsch,* 225 Pa.Super. 494, 497, 311 A.2d 679, 681 (1973), that appellant and Lam were conspirators. My review of the record reveals that while the Commonwealth proved a conspiracy between appellant and *Gray,* it failed to prove that Gray and Lam were so linked as to make Lam's statement admissible against appellant.

Before discussing just what the proof was, it may be well to put the point abstractly: In a trial against D, W may say what C said, if the prosecutor proves that D and C were conspirators, and that C's statement was made in the course of the conspiracy. Here, W (attorney Brown) did not say what C (Gray) said but what C–1 (Lam) said. Therefore, if C–1's statement is to be admissible against D, the record must show by a preponderance of the evidence that D, C, and C–1 were conspirators. I don't think it does. I agree that a conspiracy between D and C (appellant and Gray) was shown. I also agree that there was *some* evidence of a conspiracy between C and C–1 (Gray and Lam). However, in my opinion this evidence was too slight to show that C and C–1 were conspirators, and furthermore, even if one stretches and says it was not too slight, still, it was not shown that D, C, and C–1 were conspirators.

The only two pieces of evidence that link Gray (C) and Lam (C–1) are the following. John Morris of the District Attorney's office testified: "Well, I noticed that one of the defendants [Lam or Casparro] from time to time, particularly toward the end of the hearing on the motion, turned around and looked to the back of the courtroom, making eye contact with Mr. Gray, the co-defendant in this case. And Gray—Mr. Gray made certain gestures to him." N.T. at 122. Morris was then asked whether it was Lam or Casparro that was making eye contact with Gray. N.T. at 123. Morris replied: "I don't know because I never did learn the names of the respective—of the individuals." N.T. at 123. Later, one Detective Kilgore testified: "At this time [conclusion of the suppression hearing before Judge SCHWARTZ] I observed the defendant [not clear which defendant] look in the rear of the courtroom towards a white male who was unknown to me at this time." N.T. at 165. Kilgore subsequently testified that he thought the defendant who had looked to the rear of the courtroom was Lam. N.T. at 165. Evidence that two people "looked" at each other, and that one "made certain gestures" to the other, is too slight to show more than that they knew each other, and in some undefined way were cooperating with each other; it in no way shows that they were conspirators with still another person, appellant, who was not present.

Thus, even if one were to accept the majority's construction of Section 5101, a new trial should be ordered, for the admission of attorney Brown's testimony of what Lam said was not error harmless beyond a reasonable doubt, *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978), either on the obstruction of justice charge or the conspiracy charge.

I should order appellant discharged on the obstruction of justice charge, and remand for a new trial on the conspiracy charge.

CERCONE, President Judge, joins in this dissenting opinion.