J-S61038-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| NICHOLAS JOHN SCOTT, | |
| Appellant | No. 3637 EDA 2016 |

Appeal from the Judgment of Sentence November 4, 2016
in the Court of Common Pleas of Lehigh County
Criminal Division at No.: CP-39-CR-0003888-2016

BEFORE:  LAZARUS, J., RANSOM, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:               **FILED DECEMBER 13, 2017**

Appellant, Nicholas John Scott, appeals from the judgment of sentence imposed on November 4, 2016, following his non-jury conviction of obstruction of the administration of law or other governmental function.[1]  On appeal, Appellant challenges the sufficiency of the evidence.  For the reasons discussed below, we affirm.

We take the underlying facts and procedural history in this matter from the trial court's January 10, 2017 opinion and our independent review of the certified record.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 5101.

On July 1, 2016, Office of Children and Youth Services Caseworker Jamie Faucon was the on-call caseworker for the evening. Earlier in the day, Ms. Faucon had been alerted to an ongoing situation involving three minor children and their mother, [S.M.]. Ms. Faucon was made aware that there were concerns that the minor children were in imminent danger due to the fact that [S.M.] was actively using heroin and the children were without proper supervision in their home. Ms. Faucon was told that, at times, [S.M.] left the children in the care of the maternal grandmother, [C.M.], who was physically disabled.

Ms. Faucon was aware of the [] family and she had previously investigated a referral on May 26, 2016 regarding [S.M.'s] use of heroin and a flea/bedbug infestation in the residence.

The Office of Children and Youth Services maintains a policy that when a referral is made and minors under the age of [five] reside at the residence, the agency must see the children within [twenty-four] hours of the referral. At the time of the referral, the minor children were [two and one-half] years old, [four] years old, and [five] years old.

At approximately 10:40 p.m. on July 1, 2016, Ms. Faucon and Officers [Glenny] Good and [Richard] Seltzer from the Allentown Police Department went to 413½ Gordon Street, Allentown, Lehigh County, Pennsylvania to check on the [] children. Ms. Faucon met with officers on the sidewalk, a few houses away from the residence. Ms. Faucon related her concerns regarding the imminent danger to the children, their care, [S.M.'s] heroin use, [C.M.'s] inability to care for the children, and the general living conditions in the home.

The officers and Ms. Faucon proceeded to the door of the [] residence. They encountered an overwhelming odor of feces and urine. The officers knocked on the door of the residence. Because of the hot weather, the solid door to the residence was open and only the screen door was closed. From a recliner inside the home, [C.M.] responded. The officers asked to speak with [S.M.]. [C.M.] responded that [S.M.] and the children were not there. Ms. Faucon introduced herself to [C.M.] and explained that she was from the Office of Children and Youth [Services] and that the agency had received some referrals regarding the care and condition of the children. Ms. Faucon indicated that she needed

to speak with [S.M.] and see the children immediately. [C.M.] again indicated that [S.M.] and the children were not at home. Ms. Faucon explained that if it were later found that the concerns were meritorious and [C.M.] had lied, she could be held responsible for the state of the children.

From their vantage point on the porch, Officer Seltzer noted that the residence was very cluttered and dirty, with garbage strewn about. He also noted that the odor of feces was stronger as they got closer to the residence.

Soon after, [C.M.] revealed that [S.M.] and the children were home and she yelled upstairs for her to respond to the door. [S.M.] came to the door, but did not go outside. Ms. Faucon explained why she was there and told [S.M.] that she needed to check on the children. [S.M.] immediately became agitated and angry, cursing at Ms. Faucon and stating that she "was tired of this fucking shit." [S.M.] refused to allow the officers and Ms. Faucon to come into the home but eventually agreed to bring the children outside so that Ms. Faucon could assess them. When asked about the odor of feces emanating from the home, [S.M.] explained that [C.M.'s] commode had not been emptied for several days.

When the children were brought outside, Ms. Faucon noted that the foul odor of feces became stronger as B.M., the [two and one-half] year old male, was brought outside. Ms. Faucon noted that the boy's shorts were falling off of him due to the fact that his diaper was so laden. B.M. had multiple scabs, open sores, dried blood and dirt under his fingernails, and dark circles under his eyes. Ms. Faucon saw K.K., the [four] year old female, on the porch as well. Ms. Faucon noted that she too was very dirty, had open sores and scabs on her skin, blood caked under her fingernails and toenails, and very dark circles under her eyes. Ms. Faucon noted that K.K.'s hair was extremely brittle, thin and short. From her experience, Ms. Faucon noted this as a typical indication of malnutrition. K.K., the [five] year old male, came out of the home as well. Ms. Faucon noted that he too had dirt and dried blood under his fingernails, open sores, scabs, and dark circles under his eyes.

Ms. Faucon asked [S.M.] why her children were in such a state. [S.M.] replied that they had been at the park all day. While the officers interacted with [S.M.] to attempt to deescalate her

irate and angry demeanor, Ms. Faucon spoke with the older children. The children told her that they had not been at the park that day, nor had they been bathed. [S.M.] yelled at Ms. Faucon to stop speaking to her children.

Ms. Faucon also asked [S.M.] about her concerns that [she] was actively using heroin. Ms. Faucon requested to see [her] arms to check for signs of heroin use, but [she] refused to show her arms to the caseworker.

As a result of her interactions with the children and her concerns over [S.M.'s] behavior and the state of the residence, Ms. Faucon announced that she was going to call the on-call supervisor to facilitate removal of the children immediately. Ms. Faucon stepped off of the porch onto the sidewalk area to call her supervisor.

As Ms. Faucon stepped away, the officers attempted to calm [S.M.], asking her to calm down for the sake of the children and to not make the situation any more difficult for them. [S.M.] became even more agitated, took the children back into the home, and slammed and locked the door. The officers and Ms. Faucon determined that it was necessary to take emergency custody of the children. The officers made radio contact with the Communications Center and Captain William Reinik arrived on scene approximately five minutes later.

When Captain Reinik arrived, the officers and Ms. Faucon related the condition of the children and the concerns of the agency. They determined that the children were in imminent danger. They discussed how the children would be transported from the residence. Ms. Faucon determined that she would transport the children in her personal vehicle but would need to return to her office to pick up adequate child restraint systems. She left 413½ Gordon Street at approximately 11:45 p.m. and returned [fifteen] minutes later.

While Ms. Faucon was travelling to and from her office, Captain Reinik and the other officers approached the residence. They knocked and Captain Reinik announced himself and stated that they were there to take emergency custody of the children. After a few minutes, the Appellant came to the door and partially opened it,[a] holding it by the edge, half-way closed. Captain Reinik told the Appellant that the police were there to take

- 4 -

emergency custody of the children and that he needed to step aside so that they could do so. He asked the Appellant to produce the children. The Appellant refused, telling the officers that they needed a search warrant to enter the residence and take the children. The officers replied that they did not need a warrant, that they were taking emergency custody of the children because they were in imminent danger.[2] Still, the Appellant refused to move aside and demanded a warrant. The officers told the Appellant that if he did not move aside, he would be arrested for obstruction of justice. The Appellant refused again. The officers then physically moved the Appellant out of the doorway and handed him to another officer to be handcuffed, without incident. Once out of the way, the officers were able to gain entry into the home to remove the children. The children were taken into emergency custody.

[a] During the Appellant's testimony, he indicated that he fully opened the door.

(Trial Court Opinion, 1/10/17, at 2-7).

The court held a non-jury trial on November 4, 2016, and immediately following the conclusion of trial found Appellant guilty of obstruction. Appellant agreed to immediate sentencing and the trial court sentenced him to a term of incarceration of not less than three nor more than twenty-three months. The instant, timely appeal followed. On November 29, 2016, the trial court ordered Appellant to file a concise statement of errors complained of on appeal. **See** Pa.R.A.P. 1925(b). Appellant filed a timely Rule 1925(b)

_____

[2] We note that, at trial, the court took judicial notice of Pennsylvania Rule of Juvenile Court Procedure 1202. (**See** N.T. Trial, 11/04/16, at 63). That rule provides that, "[a] police officer . . . may take a child into protective custody pursuant to Rule 1200 [(relating to the commencement of dependency proceedings)] if there are reasonable grounds to believe that the child is suffering from illness or injury or is in imminent danger from the surroundings and the removal is necessary." Pa.R.J.C.P.No. 1202A(1)(a).

- 5 -

statement on December 19, 2016. **See id.** On January 10, 2017, the trial court issued an opinion. **See** Pa.R.A.P. 1925(a).

On appeal, Appellant raises the following question for our review.

> A. Whether the evidence was sufficient to sustain [Appellant's] conviction[] for obstructing administration of law when the actions of [Appellant] were legitimate and not intending to prevent the police from eventually competing their duties[?]

(Appellant's Brief, at 7) (unnecessary capitalization omitted).

On appeal, Appellant challenges the sufficiency of the evidence. (**See id.** at 10-16). Our standard of review for sufficiency of the evidence claims is well settled:

> We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, **when viewed in a light most favorable to the Commonwealth as verdict winner**, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.

> The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

**Commonwealth v. Tarrach**, 42 A.3d 342, 345 (Pa. Super. 2012) (citation omitted) (emphasis added). The Crimes Code has defined the offense of obstructing the administration of law as follows:

> [a] person commits a misdemeanor of the second degree if he intentionally obstructs, impairs or perverts the administration of law or other governmental function by force, violence, physical interference or obstacle, breach of official duty, or any other unlawful act, except that this section does not apply to flight by a person charged with crime, refusal to submit to arrest, failure to perform a legal duty other than an official duty, or any other means of avoiding compliance with law without affirmative interference with governmental functions.

18 Pa.C.S.A. § 5101.

Initially, we note, and Appellant concedes, (*see* Appellant's Brief, at 14), that a defendant may be convicted of this offense even in the absence of physical contact with the police. *See Commonwealth v. Scarpone*, 634 A.2d 1109, 1113 (Pa. 1993). Moreover, this Court has held that, "[section] 5101 includes intentional, albeit unsuccessful attempts to influence, obstruct, or delay the administration of law." *Commonwealth v. Trolene*, 397 A.2d 1200, 1204 (Pa. Super. 1979) (*en banc*). Nonetheless, Appellant contends that the evidence was insufficient to sustain his conviction because, "[h]e acted with a reasonable belief that he had a right to request the police provide some verification of their purported authority by which they demanded to enter the residence and remove his girlfriend's children." (Appellant's Brief, at 10). We disagree.

In *Commonwealth v. Reed*, 851 A.2d 958 (Pa. Super. 2004), *appeal denied*, 871 A.2d 190 (Pa. 2005), a police officer attempted to enter an apartment building in response to a tip that a runaway was at the location. *See id.* at 960. The appellant, who resided on a different floor than the

purported location of the runaway, blocked the officer's access to the stairs in the apartment building and questioned the officer about his purpose. *See id.* The police officer responded that it was none of the appellant's business and told him to "just let me get by and do my job." *Id.* (record citation omitted). After the appellant continued to bar the officer's entrance and pushed at him, the officer arrested him and charged him with obstructing administration of law or other governmental function. *See id.* On appeal, the appellant challenged the sufficiency of the evidence. *See id.* at 963. We held that when a uniformed officer states that he is acting pursuant to police authority, a citizen must accept that fact as true. *See id.* Specifically, we held that the police officer's statement that the appellant needed to "just let [him] get by and do [his] job[,]" was sufficient to inform the appellant that the officer was performing official police duties "and any interference with the officer would be interference with the administration of law." *Id.* at 964.

In the instant matter, the record reflects that Captain Reinik explained to Appellant that he was taking custody of the children pursuant to an emergency order and requested that Appellant produce the children. (*See* N.T. Trial, 11/04/16, at 64-66). When Appellant insisted that the police produce a warrant, Captain Reinik explained that he was not required to obtain a warrant in this type of situation. (*See id.*). Nonetheless, Appellant, despite being warned that he would be arrested and that a warrant was unnecessary,

continued to block access to the residence. (**See id.** at 66). Captain Reinik's testimony was confirmed by Officer Seitzer. (**See id.** at 53-55).

This evidence constitutes a far more specific explanation than we found sufficient to put an individual on notice that the police were performing official duties in **Reed**. **See Reed**, **supra** at 960. Thus, we find that the trial court did not err in holding that the evidence was sufficient to sustain Appellant's conviction. **See id.**; **see also Commonwealth v. Johnson**, 100 A.3d 207, 214-16 (Pa. Super. 2014), *appeal denied*, 112 A.3d 650 (Pa. 2015) (finding evidence sufficient to sustain conviction of obstructing administration of law or other governmental function where appellant intentionally delayed opening door to police who announced they had arrest warrant); **Commonwealth v. Conception**, 657 A.2d 1298, 1301 (Pa. Super. 1995) (holding evidence sufficient to sustain conviction of obstructing administration of law or other governmental function where appellant physically blocked door of apartment to prevent police from entering with arrest warrant).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/13/2017