J-S68010-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JOSHUA ROBERT POTTLE | : | |
| | : | |
| Appellant | : | No. 300 WDA 2019 |

Appeal from the Judgment of Sentence Entered February 28, 2019
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s): CP-65-CR-0002807-2015

BEFORE:  GANTMAN, P.J.E., LAZARUS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:　　　　　**FILED DECEMBER 23, 2019**

Joshua Robert Pottle (Pottle) appeals from the judgment of sentence imposed in the Court of Common Pleas of Westmoreland County (trial court) after his jury conviction of five counts of Sexual Abuse of Children (Distribution of Child Pornography), thirty-four counts of Sexual Abuse of Children (Possession of Child Pornography) and one count of Criminal Use of a Communication Facility.[1]  Pottle challenges his conviction based on the trial court's denial of his motion to suppress evidence and statements resulting

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 6312(c), 6312(d), and 7512(a), respectively.

from the search of his residence and statements elicited as a result of the alleged violation of his **Miranda**[2] rights.  We affirm.

**I.**

We take the following pertinent factual background and procedural history from our review of the certified record and the trial court's April 17, 2019 opinion.  The charges against Pottle stemmed from an online investigation of the possession and dissemination of child pornography between April 12, 2015, and May 21, 2015.

Between April 12 and 13, 2015, Special Agent Duane Tabak and Agent Curt Smith of the Child Predator Section of the Pennsylvania Office of the Attorney General (OAG) made a direct connection to a host computer at IP address 71.206.205.138 and downloaded child pornography that was publicly available at that IP address for such a purpose.  The agents made screen captures of the downloaded material.  An administrative subpoena was issued to Comcast Cable Communications to release subscriber information for the individual identified with IP address 71.206.205.138.  Comcast identified the user as Pottle.

After the OAG and local police executed a search of his residence, Pottle was arrested and charged with the above offenses.  On February 14, 2018, because Pottle desired to proceed *pro se*, the court held a **Grazier** hearing at

---

[2] **Miranda v. Arizona**, 384 U.S. 436 (1966).

which it permitted his counsel to withdraw and appointed standby counsel. Subsequently, Pottle filed a several *pro se* motions that the trial court denied after hearings. Relevant to this appeal are *pro se* motions to suppress that argued that the search of Pottle's residence occurred after the police failed to follow proper knock and announce procedure and that some of his statements were made without proper **Miranda** warnings.

Prior to trial, the court heard testimony from Agent Larcinese from the OAG about the facts relevant to the motions to suppress. He testified that on May 21, 2015, he and other agents from the Child Predator and Computer Forensics sections of the OAG and police from the New Kensington Police Department met outside Pottle's residence to execute the search warrant. The local police wore police uniforms and the OAG agents wore tack pants, a polo shirt with a badge embroidered on the chest, and a bulletproof vest with the word "Police" written across the chest and back. (**See** N.T. Trial, 10/01/18, at 17-18). Although the OAG agents usually drive unmarked vehicles, they used a marked police vehicle when executing the search warrant so that during the knock and announce, if Pottle looked out the window, he would see a police car, not merely a line of unmarked cars. (**See id.** at 17).

Agent Larcinese went on to testify that agents set up a perimeter around the house and a six-person entry team approached the front door. (**See id.** at 18). Agent Larcinese knocked "extremely loud[ly]" on Pottle's front door three times and yelled out "police, search warrant" repeatedly for thirty to

sixty seconds. (*Id.* at 18-19). When no one came to the door, the officers breached it using a battering ram at the direction of Agent Larcinese's supervisor. (*See id.* at 19). The six-man team started clearing the residence to ensure that no one was in the house. (*See id.*). As the agents were clearing the rooms, they came upon a locked door and forced it open, discovering Pottle inside. (*See id.* at 19-20). Agents handcuffed Pottle for officer safety, removed him from the bedroom and sat him in a chair in the living room with an agent standing nearby while they did a secondary clear to ensure no one was hiding in the house. (*See id.* at 20-21).

He testified that agents then uncuffed Pottle and he advised him that he was not under arrest and he was free to leave if he wanted. (*See id.* at 21). He explained who the officers were, told Pottle that they were in the house to execute a search warrant regarding an online investigation into child pornography, gave him a copy of the search warrant, and stated that they wished to speak with him if he was willing to do so. (*See id.* at 21-22). Pottle agreed to talk with Agent Larcinese. (*See id.* at 22). To ensure that they were in the right home, Agent Larcinese asked Pottle his name, whether he resided at that residence, to identify things in the residence, and who his internet service provider was, but the agent "did not go into the crux of the case with [him] at that time." (*Id.* at 28; *see id.* at 25-26, 28). When Pottle indicated that Comcast was his internet service provider, Agent Larcinese immediately gave Pottle his *Miranda* warnings both verbally and in writing.

- 4 -

(*See id.* at 22, 25-27). Pottle acknowledged that he understood his rights by initialing each one and then signed and initialed a waiver. (*See id.* at 22-23). Agent Larcinese testified that Pottle was willing to speak to the officers and he believed that Pottle understood his rights. (*See id.* at 23).

At the conclusion of all testimony, the court stated that it found Agent Larcinese's testimony credible and that he followed the appropriate knock and announce and *Miranda* protocols. It then denied Pottle's motions to suppress. (*See id.* at 34).

The case then immediately proceeded to trial, at the conclusion of which the jury convicted Pottle of all previously mentioned offenses. On January 29, 2019, the trial court sentenced him to the mandatory minimum sentence of not less than twenty-five nor more than fifty years' incarceration. Pottle timely appealed *pro se*. Both he and the court complied with Rule 1925. *See* Pa.R.A.P. 1925. Counsel for Pottle entered his appearance in this Court on June 5, 2019.

## II.

On appeal, Pottle challenges the trial court's denial of his motions to suppress.[3] He maintains that his rights were violated by the officers' failure

---

[3] "An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Brogdon*, ____ A.3d ____, 2019 WL 4866811, at *5 (Pa. Super. filed Oct. 3,

to knock and announce for a sufficient period before breaching the door with a battering ram, and that statements were elicited from him prior to his receipt of **Miranda** warnings, thus rendering all statements inadmissible. (**See** Pottle's Brief, at 6-15).

**A.**

We will first address Pottle's knock and announce argument. Pennsylvania Rule of Criminal Procedure 207, Manner of Entry into Premises, provides:

> A. A law enforcement officer executing a search warrant shall, before entry, give, or make reasonable effort to give notice of the officer's identity, authority, and purpose to any occupant of the premises specified in the warrant, unless exigent circumstances require the officer's immediate forcible entry.
>
> B. Such officer shall await a response for a reasonable period of time after this announcement of identity, authority, and purpose, unless exigent circumstances require the officer's immediate forcible entry.
>
> C. If the officer is not admitted after such reasonable period, the officer may forcibly enter the premises and may use as much physical force to effect entry therein as is necessary to execute the search.

Pa.R.Crim.P. 207.

---

2019) (citation omitted). "Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." **Id.** (citation omitted). "Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous." **Id.** (citation omitted).

What is reasonable under Rule 207 requires "a case-by-case determination based upon the information available to the police, rather than engaging in a subjective analysis of what the occupants of the particular premises knew and whether they thought the police had provided them with sufficient time to relinquish the premises voluntarily." *Commonwealth v. Wagstaff*, 911 A.2d 533, 535 (Pa. Super. 2006) (citations and internal quotation marks omitted). "Generally, absent exigent circumstances, police must announce both their authority and purpose before forcible entry." *Commonwealth v. McDonel*, 601 A.2d 302, 304 (Pa. Super. 1991) (citation omitted). "The purposes of the 'knock and announce' rule . . . are to prevent violence and physical injury to the police and occupants, to protect an occupant's privacy expectation against unauthorized entry of a person unknown to him or her, and to prevent property damage resulting from forced entry." *Wagstaff*, *supra* at 535 (citations and brackets omitted). Importantly, the Pennsylvania Supreme Court has instructed that police conduct does not frustrate the purpose of Rule 207 when they forcibly enter a residence because "the occupants of the premises remain silent after repeated knocking and identification[.]" *Commonwealth v. Chambers*, 598 A.2d 539, 541 (Pa. 1991) (citation omitted).

Here, the trial court stated that it "was satisfied that the warrant was properly executed in all respects[ and that c]learly the record demonstrates

that the requirements of Rule 207 were met." (Trial Court Opinion, 4/17/19, at 20). We agree.

At trial, Agent Larcinese testified that all law enforcement were in marked police vehicles and uniforms that identified them as police when they executed the warrant at Pottle's residence. (**See** N.T. Trial, at 17-18). Agent Larcinese knocked "extremely loud[ly]" on Pottle's front door, repeatedly yelling out "police, search warrant, police, search warrant" for thirty to sixty seconds. (**Id.** at 19). When no one answered the door, his supervisor advised that it should be breached. (**See id.**).

Based on the foregoing, the Commonwealth established that the police clearly and loudly identified themselves and announced their purpose and Pottle remained silent. Indeed, they also wore clothing identifying themselves and drove marked vehicles so that, should Pottle look outside, he would see that they were police officers. Based on the foregoing, we conclude that the facts of record support the trial court's finding that law enforcement properly utilized the knock and announce procedure and that the requirements of Rule 207 were met. Hence, it properly denied Pottle's motion to suppress on this basis. **See Brogdon**, **supra** at *5. Pottle's first issue lacks merit.

**B.**

Next, Pottle argues that the trial court erred in denying his motion to suppress statements provided to law enforcement because Agent Larcinese violated his rights by asking him questions before providing him with his

*Miranda* warnings. (*See* Pottle's Brief, at 10-15). Specifically, he maintains that under the totality of the circumstances, a reasonable person would have believed he was in custody, a belief supported by Agent Larcinese's testimony that he felt obligated to inform Pottle of his *Miranda* warnings after Pottle confirmed his internet provider, although the circumstances had not changed. (*See* Pottle's Brief, at 13).

> The principles surrounding *Miranda* warnings are [] well settled. The prosecution may not use statements stemming from a custodial interrogation of a defendant unless it demonstrates that he was apprised of his right against self-incrimination and his right to counsel. Thus, *Miranda* warnings are necessary any time a defendant is subject to a custodial interrogation. As the United States Supreme Court explained, the *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. Moreover, in evaluating whether *Miranda* warnings were necessary, a court must consider the totality of the circumstances.

*Commonwealth v. Gaul*, 912 A.2d 252, 255 (Pa. 2006), *cert. denied*, 552 U.S. 939 (2007) (citations and quotation marks omitted).

"The law is clear that *Miranda* is not implicated unless the individual is in custody **and** subjected to interrogation." *Commonwealth v. Snyder*, 60 A.3d 165, 170 (Pa. Super. 2013) (citations omitted; emphasis in original).

> The test for determining whether a suspect is being subjected to custodial interrogation so as to necessitate *Miranda* warnings is whether he is physically deprived of his freedom in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by such interrogation. Said another way, police detentions become custodial when, under the totality of the circumstances, the conditions and/or duration of the detention become so coercive as to constitute the functional equivalent of arrest.

***Commonwealth v. Schwing***, 964 A.2d 8, 11 (Pa. Super. 2008), *appeal denied*, 989 A.2d 916 (Pa. 2009) (citation omitted).

In this case, the record reflects that a team of agents used a battering ram to enter Pottle's home, broke down his locked bedroom door, removed him from his bedroom in handcuffs, and placed him under the watch of an OAG agent while the law enforcement agencies conducted a search of his home. (***See*** N.T. Trial, 20-22, 26-29). Although Agent Larcinese removed the handcuffs before seating Pottle in the chair and told him that he was not under arrest, under the totality of the circumstances, Pottle could have reasonably believed that the circumstances were coercive enough to be the functional equivalent of an arrest. ***See Schwing***, ***supra*** at 11.

However, this does not end our inquiry which requires us to consider not only whether Pottle reasonably believed he was in custody, but also whether he was subject to interrogation, thus requiring ***Miranda*** warnings. ***See Snyder***, ***supra*** at 170.

> Interrogation is defined as "police conduct calculated to, expected to, or likely to evoke admission." ***Commonwealth v. Umstead***, 916 A.2d 1146, 1152 (Pa. Super. 2007) (citations omitted); ***see Rhode Island v. Innis***, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980) ("the definition of interrogation can extend only to words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response").

***Snyder***, ***supra*** at 170.

- 10 -

Pottle argues that Agent Larcinese "elicited highly relevant, inculpatory information through his initial questioning." (Pottle's Brief, at 14). We disagree.

The record reveals that prior to giving Pottle his **Miranda** warnings, Agent Larcinese asked Pottle for identifying information such as his name and whether he lived in the home to ensure that the agents were at the right residence, but he "did not go into the crux of the case with [him] at that time." (N.T., **supra** at 28; **see id.** at 25-26, 28). Because these questions were not "reasonably likely to elicit an incriminating response," no **Miranda** warnings were required, even if Pottle thought he was not free to leave under the totality of the circumstances. **Snyder**, **supra** at 170. In fact, as soon as Pottle indicated that Comcast was his internet service provider, the agent immediately gave him his **Miranda** warnings, presumably because any further questions would be "calculated to, or expected to, or likely to evoke admission." **Id.**

Moreover, even if Agent Larcinese's questions about whether the computer was Pottle's and the name of his internet service provider arguably were interrogatory, these questions and the answers thereto constituted harmless error based on the inevitable discovery doctrine. **See Commonwealth v. Hall**, 199 A.3d 954, 960 (Pa. Super. 2018) (harmless error analysis applied to denial of motion to suppress). As conceded by Pottle, law enforcement would have discovered this information by inspecting the

computer for which they had a search warrant. (*See* Pottle's Brief, at 13); *see also Commonwealth v. Gonzalez*, 979 A.2d 879, 890 (Pa. Super. 2009) (Inevitable discovery doctrine provides that "evidence which would have been discovered was sufficiently purged of the original illegality to allow admission of the evidence. [I]mplicit in this doctrine is the fact that the evidence would have been discovered despite the initial illegality.") (citations and internal quotation marks omitted).

Therefore, based on the foregoing, we conclude that the trial court properly denied Pottle's motion to suppress his statements to police on the basis of *Miranda*. *See Brogdon*, *supra* at *5. Pottle's second issue lacks merit and we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/23/2019